IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03348-MEH

ARDEN B. MORROW,

      Plaintiff,

v.

CALICO RESOURCES CORP.,

      Defendant.

---

## ORDER GRANTING MOTION TO DISMISS

---

Before the Court is Defendant's Amended Motion to Dismiss for Lack of Personal Jurisdiction [filed December 17, 2014; docket #10]. The matter is fully briefed, and the Court finds oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court **GRANTS** the motion to dismiss.

## BACKGROUND

### I.    Procedural History

Plaintiff, Arden B. Morrow ("Morrow"), initiated this action against Defendant, Calico Resources Corp. ("CRC"), a Canadian corporation, on November 12, 2014 in Douglas County, Colorado alleging a claim for breach of contract. Complaint, docket #4. CRC removed the action to this Court on December 10, 2014. Notice, docket #1.

CRC filed the present Amended Motion to Dismiss on December 17, 2014 in response to Morrow's Complaint, arguing that Morrow's claim should be dismissed for failure to plead adequate personal jurisdiction. CRC argues that it has virtually no contacts with the State of Colorado, and that the contract upon which Morrow sues is expressly governed by Canadian law and relates to

activities that occurred in Canada.  Moreover, CRC contends that the exercise of jurisdiction over it would be unreasonable pursuant to governing law.

Morrow counters that approximately 90% of CRC's assets are comprised of Calico Resources USA ("CR-USA"), which has an office in Colorado and has filed for authorization to do business in Colorado; that CRC's business was formerly conducted by CEO William Wagener from an office in Castle Rock, Colorado; that CRC subleased office space from Lehigh International, Inc. in Castle Rock and used its services; and that there is no office occupied by staff in Canada, only the necessary street address to comply with Toronto Stock Exchange requirements.  Furthermore, Morrow asserts CRC made compensation payments to its employees in Colorado, and the contract at issue in this case was executed at the Castle Rock office.  Morrow contends that, considering these "facts," this Court has both general and specific jurisdiction over CRC.

CRC replies that CRC and CR-USA have a parent-subsidiary relationship and are not the same for jurisdictional purposes, and no facts exist demonstrating CRC has designated CR-USA as its agent.  In addition, Lehigh International is owned by Morrow; CRC has no bank accounts and no employees in Colorado; and it is undisputed Morrow was an independent contractor.  In essence, CRC argues it is separate and apart from CR-USA, which has contacts with Colorado and, thus, Morrow cannot demonstrate general or specific jurisdiction over CRC.

## II.    Statement of Facts

The following are factual allegations made by Morrow in his Complaint and offered by CRC for jurisdictional analysis.

Arden Morrow ("Morrow") was previously the Chief Executive Officer, President and a Director of Calico Resources Corp. ("CRC").  Complaint, ¶ 5, docket #4.  CRC was incorporated

2

and exists pursuant to the laws of British Columbia, Canada, and has its principal place of business in Vancouver, B.C.  Declaration of Alec Peck, December 17, 2014 ("Peck Declaration"), ¶ 2, docket #10-1.  CRC does not sell any products in the United States, including the State of Colorado, and does not solicit business from customers in Colorado; it holds no leases nor bank accounts in Colorado; it is not registered to do business in Colorado; and it owns no real property nor assets in Colorado.  *Id.* at ¶¶ 6, 7, 8.

CRC is engaged principally in the acquisition, exploration and development of mineral property interests.  *Id.* at ¶ 5.  Its wholly owned subsidiary, Calico Resources USA ("CR-USA"), owns and is in the process of developing a mine project in Oregon known as the "Grassy Mountain" project.  Declaration of Arden B. Morrow, January 5, 2015 ("Morrow Declaration"), ¶ 6, docket #18-1.  CR-USA has filed for authorization to conduct business in Colorado and has an office for business in Colorado.  Morrow Declaration, ¶ 6.

Morrow is a resident of Colorado and resides at 946 Country Club Parkway, Castle Rock, Colorado.  Complaint, ¶ 1.  During his contract period with CRC, Morrow conducted all business on behalf of CRC and CR-USA from an office in Castle Rock.  Morrow Declaration, ¶ 7.  The work conducted out of the Castle Rock office was primarily directed, and the billing was coded, toward CR-USA.  *Id.* at ¶ 9.

On April 1, 2011, Morrow and CRC executed a Change of Control Agreement, a copy of which is attached to the Complaint in this matter.  Complaint, ¶ 6.  According to the Agreement, CRC was to compensate Morrow in the event of a change of control.  *Id.* at ¶ 7.  When a change of control occurred, Morrow sought payment under the Agreement; however, he has received no payments from CRC.  *Id.* at ¶¶ 8, 9, 10.

## LEGAL STANDARDS

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted).

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2005) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). In Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond*

*Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (en banc).

## ANALYSIS

In this case, CRC contends that Morrow has not, and cannot, establish this Court's personal jurisdiction through his Complaint's well-pled allegations and declaration.

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton*, 375 F.3d at 1076 ("A defendant's contacts are sufficient if the defendant

purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

In addition to examining CRC's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Communs., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

A.    General Jurisdiction

General jurisdiction, unlike specific jurisdiction, subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Specifically, "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Hall*, 466 U.S. at 414. However, these contacts must be "continuous and systematic." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Hall*, 466 U.S. at 416).

Here, Morrow argues that "[CRC] carries on continuous and systematic business in Colorado

through its wholly owned subsidiary, [CR-USA]" and that "[CRC] is [CR-USA]'s agent and its contacts must be imputed to [CRC] in the jurisdictional analysis."  CRC counters that the two entities are separate as parent [CRC] and subsidiary [CR-USA], there are no facts demonstrating an agency relationship, and Morrow fails to allege that CRC's contacts with Colorado were so "continuous and systematic as to render it essentially 'at home'" in Colorado.

First, although somewhat muddled in Morrow's response brief, it appears that the parties agree CRC and CR-USA are separate corporate entities: CRC was established as a Canadian corporation to benefit in fundraising from the advantages of the Toronto Stock Exchange, and CR-USA owns and is developing the "Grassy Mountain" project in Oregon.  "For purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.'" *Good v. Fuji Fire & Marine Ins. Co.*, 271 F. App'x 756, 759 (10th Cir. 2008) (quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) and citing *Benton*, 375 F. 3d at 1081).  While Morrow alleges "[t]he assets of CR-USA comprise approximately 90% of the assets of CRC," he does not contend that the two entities are the same or that circumstances justify disregarding CRC as separate.

Second, the Court finds it does not have general jurisdiction over CRC alone.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, -- U.S. --, 131 S. Ct. 2846, 2851 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").  Morrow argues that a former CEO and two officers of CRC (during the relevant time period) had offices in Colorado, that CRC subleased office

space in Colorado from his company on two occasions, and that an "800" telephone number for CRC was routed to the Colorado office in 2012 and 2013; however, he also concedes that the work conducted from the Colorado office(s) "was primarily directed toward, and the billing was coded toward[,] CR-USA."  The Court concludes that, even if true, the residences of three officers, the subletting of office space, and the re-routing of a telephone number for a period of time do not suffice to demonstrate the systematic and continuous contacts with Colorado so as to render Canadian-based CRC "at home" in Colorado.  *See id.* at 2852, 2857 (the Supreme Court found no general jurisdiction over parties who were not registered to do business in North Carolina, had no employees or bank accounts in the state, did not design, manufacture or advertise products in the state, and did not solicit business from, or sell or ship products to, the state).  Moreover, there is no indication that these specific activities by CRC are related to the dispute arising from the Change of Control Agreement.  *See Daimler AG v. Bauman*, -- U.S. --, 134 S. Ct. 746, 757 (2014) ("a corporation's 'continuous activity of some sorts with a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity'") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

Third, for purposes of this motion, the parties appear to agree that this Court could have general jurisdiction over CR-USA, which "had an office and was registered to do business in Colorado."  Reply Brief, docket #20 at 1-2 (noting also that "it is clear that neither general nor specific jurisdiction exist *in the absence of Calico USA's contacts*") (emphasis added).  However, a court may not ***automatically*** exercise jurisdiction over a parent corporation merely because such jurisdiction may be exercised over the parent's subsidiary.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.4 (10th Cir. 2005) (emphasis in original) (citing *Keeton v. Hustler Magazine,*

*Inc.*, 465 U.S. 770, 781 n.13 (1984)).  Thus, Morrow argues that under either a parent-subsidiary or agency relationship, CR-USA's contacts with Colorado should be imputed to CRC for jurisdictional purposes.

CRC counters that the Supreme Court's recent opinion in *Daimler, supra*, is directly on point.  CRC first contends that, in light of "the Supreme Court's discussion of agency in general" in *Daimler*, "it is doubtful that any agency basis for general jurisdiction exists."  Reply, docket #20 at 6.  However, the *Daimler* court neither rejected outright an agency theory applied to jurisdiction nor even criticized the invocation of such theory; rather, it specifically found, "we need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained."  *Daimler*, 134 S. Ct. at 759.  In so finding, the Court rejected the *Ninth Circuit's* agency theory – derived from a consideration whether the subsidiary "performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services" – saying that it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."  *Id.* at 759-60.

Rather, *Daimler* makes clear that, even if an agent's or subsidiary's contacts are imputed to a parent company for general jurisdictional analysis, a plaintiff still must allege facts, taken as true, demonstrating the contacts with the forum state are so continuous and systematic as to render the parent at home in the forum state.  *Id.* at 761.  "At home" can be read to mean "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit ... on causes of action arising from dealings entirely distinct from those activities."  *Id.*

( quoting *Int'l Shoe Co.*, 325 U.S. at 318).   The Supreme Court concluded that, since neither Daimler nor its subsidiary, MBUSA (which the Court assumed was "at home" in California), was incorporated in California nor had a principal place of business in California, and none of the events giving rise to the plaintiff's claims occurred in California, general jurisdiction over Daimler was improper.  *Id.* at 761-62.

Applying *Daimler* to this case, even assuming CR-USA were "at home" in Colorado, there are no allegations that either CRC or CR-USA are incorporated in this state or have their principal places of business in Colorado, and Morrow does not allege instances in which the continuous corporate operations within Colorado are "so substantial and of such a nature as to justify suit" against CRC in Colorado.  Simply conducting business from an office in Colorado is insufficient. *Id.* at 761 n.18.  Moreover, it is unclear where the actions giving rise to Plaintiff's breach of contract claim – a "change of control" and failure to compensate – occurred.[1]  Accordingly, in light of *Daimler*, this Court must conclude that it does not have general jurisdiction over CRC.

B.    Specific Jurisdiction

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities."  *Bartile Roofs, Inc.*, 618 F.3d at 1160.  With respect to this question, Colorado's long-arm statute provides, in pertinent part,

---

[1]Morrow alleges in the Complaint that "performance of the agreement is to be in Douglas County and the sums owed to the Plaintiff are owed in Douglas County [Colorado]."  Complaint, ¶ 4.  However, the only "performance" that the Court can discern from the contract that is yet "to be" is the payment to Morrow following the change of control.  The Complaint mentions nothing regarding where the change of control occurred and/or where the failure to pay occurred.

Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state.

Colo. Rev. Stat. § 13-1-124(1).  In this case, the Plaintiff alleges the commission of no torts; his is simply a breach of contract claim.  Complaint, ¶ 10, 11.  Accordingly, the Court will focus its analysis on subsection (a).

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S.Ct. at 2851.  The Supreme Court recently re-articulated the criteria for establishing specific jurisdiction. *See Walden v. Fiore*, -- U.S. --, 134 S. Ct. 1115 (2014). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 1121 (quoting *Keeton*, 465 U.S. at 775).  The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121-22 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe*, 326 U.S. at 319) (emphasis in original).  The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 1122-23 (citing *Burger King*, 471 U.S. at 478). Thus, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts

in the other party's home forum, we believe the answer clearly is that it cannot." *Id.*

In this case, the Court finds a fundamental problem in Morrow's arguments concerning specific jurisdiction. Morrow identifies the following activities as CRC's (and, perhaps, CR-USA's) contacts with Colorado: execution of the Change in Control Agreement; sublease for office space in Castle Rock from Morrow's company; payment of expenses from the Castle Rock office; re-routing an "800" number in 2012 and 2013 to Castle Rock; the former CEO and another officer worked from the Castle Rock office. Only one of these activities relates to the dispute in this case: execution of the Agreement. However, the execution of a contract alone does not suffice to establish minimum contacts. *Walden*, 134 S. Ct. 1123. The contract itself is between Morrow and CRC; it provides no products nor services that would benefit or, even, impact any other individual or entity in Colorado. *Id.* ("a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction").

Morrow asserts that the Court may consider other activities unrelated to the dispute in its analysis of specific jurisdiction. While this may be true, such consideration is in addition to the determination of contacts/activities from which Morrow's injury(ies) arose. Certainly, whether it was actually CRC or its subsidiary, CR-USA, the parties do not dispute that business on behalf of these entities was conducted from an office in Castle Rock. However, the conducting of such business (apparently related to the Grassy Mountain mining project) is neither related to nor serves as a basis for the breach of contract claim in this action, since Morrow's only claimed injury is non-payment from a Change of Control Agreement. To the extent Morrow might argue that the business he conducted related to his employment as CEO and President of CRC, the Court notes that the subject Agreement is *not* an employment agreement and does not relate to Morrow's role as a CRC

officer.  Rather, it specifically governs circumstances surrounding Morrow's role as a Director and member of CRC's Board of Directors.  It is neither alleged nor, even, suggested in this case that Morrow's business activities in Castle Rock primarily involved Morrow's role as a Director as opposed to his role as President/CEO.

The Court concludes that, assuming CRC and/or its subsidiary, CR-USA, "purposefully availed itself of the privilege" of conducting business in Colorado, Morrow has failed to demonstrate his injuries from CRC's alleged breach of contract arose out of or related to CRC's activities in Colorado.  *See Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014) (specific jurisdiction "exists only when the suit relates to the defendant's contacts with the forum state").  Accordingly, the Court finds Morrow has failed to demonstrate sufficient minimum contacts by which to impose personal jurisdiction over CRC.

C.    Fair Play and Substantial Justice

Having concluded that Morrow has not met his burden to establish CRC's minimum contacts with Colorado, the Court need not proceed, but nevertheless concludes that the exercise of personal jurisdiction over CRC would be unreasonable.

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice requires an analysis of the five factors set forth in *ClearOne Communs., supra*: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Id.* at 764.  "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on

13

[minimum contacts], the less a defendant need showing terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *Benton*, 375 F.3d at 1079 (citing *OMI Holdings, Inc.*, 149 F.3d at 1092).

With respect to the first factor, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* "When the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *Id.* In *Benton*, the Tenth Circuit found the burden on the Canadian defendant to be "significant" considering the company had its principal office in Canada, no office or property in Colorado, no employees in Colorado and was not licensed to do business in Colorado. *Id.* Likewise, Alec Peck of CRC attests:

> 5. Calico is an exploration and development stage company engaged principally in the acquisition, exploration and development of mineral property interests, none of which are located in Colorado.

> 6. Calico does not sell any products in Colorado, or in the United States, and does not solicit business from customers in Colorado.

> 7. Calico holds no leases in Colorado, no bank accounts in Colorado, and is not registered to do business in Colorado.

> 8. Calico does not own any real property or assets in the State of Colorado.

Peck Declaration, ¶¶ 5-8, docket #10-1. Morrow, in his declaration, does not dispute these statements, but attests that CRC had bank accounts in the United States, utilized his and his company's services in Colorado, subleased office space in Colorado on two occasions, employed officers who do not have offices in Canada or utilize the Canadian office, and its subsidiary has filed for authorization to conduct business out of Colorado. Morrow Declaration, ¶¶ 5, 6, 7, 8, 12, 13,

14

14, and 15.  Taken as true, these statements may serve to lessen the "significance" of CRC's burden; however, with respect to the particular dispute in this case, Peck also attests:

> 13. All of the Company's books and records concerning any of the transactions described in the "Change in Control" agreement are located in Canada.
>
> 14. Calico's shareholder and corporate meetings take place in Canada, and thus any votes concerning the election of directors would occur there.
>
> 15. Any winding up or dissolution of the Company would take place in Canada.
>
> 16. Because Calico is located in Canada, any acquisition of Calico would take place in Canada.

Peck Declaration, ¶¶ 13-16.  Morrow does not dispute these statements.  Considering all statements and CRC's nature as a foreign company, the Court finds that CRC would suffer a substantial burden by litigating Morrow's claim in Colorado and weighs the first factor against finding personal jurisdiction reasonable.

Second, Morrow contends that Colorado "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."  Response, docket #18 at 11.  While this is true, "[t]he state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."  *Benton*, 375 F.3d at 1079.  Here, Morrow is a Colorado resident, but the Agreement provides that it is governed by the laws of Canada.  Accordingly, this second factor weighs neutrally in favor of neither party.  *Id.*

The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."  *Id.*  In this case, Morrow contends that "it is fair and just to allow the Plaintiff ... to uphold a contract

provision. The Plaintiff has retained counsel in Colorado." Response, docket #18 at 12. Other than the fact that his counsel resides in Colorado, however, Morrow fails to allege or argue that his "chances of recovery would be diminished" by litigating this case in Canada. While he complains that he "should not be required to travel across borders seeking redress for acts of an international corporation doing business in Canada and extensively in the United States and Colorado," Morrow does not dispute that Canada law governs the suit and has not established that litigating the matter would cause undue hardship on him. *See Benton*, 375 F.3d at 1079. Accordingly, the Court finds the third factor weighs against finding personal jurisdiction reasonable.

The fourth factor "asks 'whether the forum state is the most efficient place to litigate the dispute.' Key to the inquiry are the location of witnesses, where the wrong underlying the suit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* at 1080 (internal quotation marks and citation omitted). Morrow's attorney argues generally that "[m]any of the key witnesses are in [the] United States and several are in Colorado" (Response, docket #18 at 11) but he fails to specify whom and how many. As set forth above, it is unclear where Morrow's injury – the failure to pay after a change in control – occurred, and the parties agree that the dispute is governed by Canadian law. Because this is a single contract claim between Morrow and CRC, the Court finds that jurisdiction here would not be necessary to avoid nonexistent piecemeal litigation. Consequently, the Court finds that Colorado is not necessarily the most efficient place to litigate Morrow's claim and weighs the fourth facts against finding personal jurisdiction reasonable.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." In considering the

foreign nature of a defendant and the "great care and reserve" to be exercised, relevant factors to be analyzed include "whether one of the parties is a citizen of a foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *Benton*, 375 F.3d at 1080. As in *Benton*, here, taking as true Morrow's statement that CRC chose to conduct business with him, a Colorado resident, it is also true that CRC is a Canadian corporation, Canadian law will govern the dispute, and the Court is "required to give deference to the international nature of this case." *Id.* Thus, the Court must conclude that exercising personal jurisdiction over CRC would affect Canada's policy interests and the fifth factor weighs against finding personal jurisdiction reasonable.

In weighing the required factors, the Court concludes that personal jurisdiction over CRC would be unreasonable in light of the circumstances in this case and would offend traditional notions of fair play and substantial justice. That, coupled with the Court's finding that Morrow has not demonstrated minimum contacts with CRC sufficient to satisfy jurisdictional standards, prompts the Court to find that CRC's motion to dismiss must be granted.

## CONCLUSION

Plaintiff Arden Morrow ("Morrow") has not met his burden of demonstrating this Court's personal jurisdiction over Defendant Calico Resources ("CRC") and, further, the imposition of personal jurisdiction over CRC would be unreasonable. Accordingly, the Court **GRANTS** the Defendant's Amended Motion to Dismiss for Lack of Personal Jurisdiction [filed December 17, 2014; docket #10] and dismisses Morrow's claim in this case without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

DATED this 9th day of February, 2015, at Denver, Colorado.

17

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge